**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| JASON COLTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VELOCITY RISK UNDERWRITERS, LLC and WATERSTREET COMPANY,<br><br>Defendants. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**DEMAND FOR JURY TRIAL** |

Jason Colton ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Velocity Risk Underwriters, LLC ("Velocity") and WaterStreet Company ("WaterStreet) (collectively "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## INTRODUCTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of PII in the possession and custody and/or control of Defendants (the "Data Breach").

2. Defendant Velocity is a "Managing General Agency that also serves as a third party claims administrator for Velocity Specialty Insurance Company and other insurers.[1] Defendant "provides comprehensive risk transfer solutions for catastrophe prone areas."[2]

---

[1] *About Us,* VELOCITY, https://www.velocityrisk.com/velocity-mga (last visited August 5, 2025).
[2] *Id.*

3. As such, Defendant Velocity stores a litany of highly sensitive personal identifiable information ("PII") about its current and former clients. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4. Defendant WaterStreet is a third-party vendor which hosted certain of Velocity's data, including client PII.

5. Velocity chose to allow WaterStreet access and control over its clients' highly sensitive personal information.

6. On information and belief, the Data Breach was discovered by Defendants on or about March 17, 2025. Following an internal investigation, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former clients personally identifying information ("PII") including but not limited to name, financial account information, and/or Social Security number (or Tax Identification Number). Ex. A.

7. In or around August 2025–more than four months after the Data Breach first occurred–Defendants finally began providing victims with a notice of the Breach. A sample of Defendants' Breach Notice is attached as Exhibit A.

8. Defendants failed to promptly inform Class Members even though Plaintiff and approximately 41,270 Class Members who had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

9. This response is significantly deficient given that Tennessee law permits a delay of only forty-five (45) days before sending notice to affected persons.

10. Defendants' response to the Data Breach establishes that its cybersecurity program was likely maintained in a grossly negligent manner. For example, Defendant WaterStreet was so ill-prepared to face a highly foreseeable cyberattack that it was forced to shut down its systems in response to the attack because it didn't have enough control over its systems or intelligence on what was happening in its systems to know whether the hackers were still in its systems or how to remove them without ceasing operations.

11. Still further, the significant delay in notifying affected persons shows a serious lack of preparation and preparedness because industry standard cybersecurity incident response plans are specifically designed to act as a playbook or runbook for a company's incident response team to follow, and includes step-by-step instructions on how to ensure, for example, that a company meets its statutory notice obligations in a timely manner.

12. These failures make it highly likely that WaterStreet failed to have the most elementary cybersecurity safeguard in place—a reasonable and tested incident response plan. Indeed, if a company cannot do even the basics, then it strongly implies that the rest of its cybersecurity program (if it has one) is likely maintained in a grossly negligent manner.

13. Moreover, Defendant Velocity Risk Underwriters seems to have chosen a vendor to send Plaintiff and the Class's highly sensitive PII to without checking to see if the vendor had done even the basics. On information and belief, even a cursory review of Defendant's cybersecurity program would have revealed its grossly inadequate state, but Defendant Velocity appears to have exercised the even slight care to assess its chosen vendor's security posture.

14. Defendants' Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell clients when the Breach occurred, how the breach happened, and why Defendants only just begun formal notification to victims that hackers had gained access to highly

private PII.

15. Defendants' failure to timely detect and report the Data Breach made clients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

16. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

17. In failing to adequately protect Plaintiff's and the Class's PII, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendants violated state and federal law and harmed at least 41,270 of its current and former clients.

18. Plaintiff and members of the proposed Class are victims of Defendants' gross negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their PII. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

19. Plaintiff is a current customer of Velocity and Data Breach victim.

20. Accordingly, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendants' possession.

## PARTIES

21. Plaintiff, Jason Colton is a natural person and citizen of Houston, Texas, where he intends to remain.

22. Defendant, Velocity Risk Underwriters, LLC, is a Company formed under the laws

of Delaware, with its principal place of business at 10 Burton Hills Blvd, Suite 300, Nashville, TN 37215-9922.

23. Defendant, WaterStreet Company, is a Montana Corporation, with its principal place of business at 214 S. Complex Dr., Kalispell, MT 59901-8643.

## JURISDICTION & VENUE

24. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and Plaintiff and Defendants are citizens of different states.

25. This Court has personal jurisdiction over Defendants because at least one Defendant maintains its principal place of business in this District and does substantial business in this District.

26. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND FACTS

***Velocity***

27. Velocity is a "Managing General Agency that also serves as a third party claims administrator for Velocity Specialty Insurance Company and other insurers.[3] Defendant "provides comprehensive risk transfer solutions for catastrophe prone areas."[4]

28. As part of its business, Velocity receives and maintains the PII of thousands of current and former clients. In doing so, Velocity implicitly promises to safeguard their PII.

29. In collecting and maintaining its current and former clients' PII, Velocity agreed it

[3] *About Us,* VELOCITY, https://www.velocityrisk.com/velocity-mga (last visited August 5, 2025).
[4] *Id.*

would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

30. Indeed, Velocity acknowledges in its privacy policy that "[i]ntegrity in our dealings with clients, employees, carrier trading partners and service trading partners (collectively, "clients") is a cornerstone of our culture. Our commitment extends to personal information about our clients that we might possess or acquire. We strive to protect the personal information under our control and take certain precautions to help maintain the security and accuracy of that data."[5]

31. Despite recognizing its duty to do so, on information and belief, Velocity has not implemented reasonably cybersecurity safeguards or policies to protect its clients' PII or supervised its IT or data security agents and employees, including WaterStreet, to prevent, detect, and stop breaches of its systems. As a result, Velocity left significant vulnerabilities in its storage of Plaintiff's and the Class's PII for cybercriminals to exploit and gain access to clients' PII.

***WaterStreet***

32. WaterStreet specializes in "property and casualty insurance software… to enhance customer service capabilities."[6]

33. WaterStreet is a former third-party vendor of Velocity. WaterStreet thus had a duty to oversee, manage, and protect the PII of its clients' consumers.

34. On information and belief, these third-party consumers, including Velocity's clients, whose PII was collected by WaterStreet, do not do any business with WaterStreet.

35. In working with third party consumers' highly sensitive data, WaterStreet advertises that "[p]rotecting the security and privacy of your personal data is important to

---

[5] *Privacy Policy*, Velocity, https://ryanspecialty.com/privacy-statement/ (last visited August 5, 2025).
[6] *WaterStreet Overview*, LinkedIn, https://www.linkedin.com/company/waterstreetcompany/about/ (last visited August 5, 2025).

WaterStreet Company; therefore, we conduct our business in compliance with applicable laws on data privacy protection and data security."[7] And it claims "[t]o protect your personal data against accidental or unlawful destruction, loss or alteration and against unauthorized disclosure or access, WaterStreet Company uses technical and organizational security measures."[8]

36. Despite recognizing its duty to do so, on information and belief, WaterStreet has not implemented reasonably cybersecurity safeguards or policies to protect its clients' PII or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, WaterStreet left significant vulnerabilities in its storage of Plaintiff's and the Class's PII for cybercriminals to exploit and gain access to clients' PII.

***The Data Breach***

37. Plaintiff is a current customer of Velocity. As a condition of receiving services with Velocity, Plaintiff provided Velocity with his PII. Velocity used that PII to facilitate its services to Plaintiff and required Plaintiff to provide that PII to obtain services.

38. On information and belief, Velocity provided WaterStreet with Plaintiff's PII. Thus, WaterStreet was granted access to and custody of Plaintiff's PII.

39. On information and belief, Defendants collect and maintain clients' PII in their computer systems.

40. In collecting and maintaining the PII, Defendants implicitly agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

41. According to the Breach Notice, on March 17, 2025, Defendants discovered "suspicious activity" related to WaterStreet's environment. Ex. A. Following an internal investigation, Defendants "determined that an unauthorized actor accessed certain files on March

---

[7] Privacy Policy, WaterStreet, https://www.waterstreetcompany.com/privacy-policy/ (last visited August 5, 2025).
[8] *Id.*

17, 2025." Ex. A.

42. Due to intentionally obfuscating language, it is unclear how long it took Defendants to discover that they had been subject to the breach.

43. Additionally, Defendants' investigation determined that "personal information related to certain individuals was impacted by this event." Ex. A.

44. In other words, Defendants' investigation revealed that their cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its clients' highly private PII. Velocity knew or should have known that granting WaterStreet access to Plaintiff's PII would result in a Data Breach given WaterStreet's inadequate cybersecurity practices.

45. Despite their duties and alleged commitments to safeguard PII, Defendants do not in fact follow industry standard practices in securing consumers' PII, as evidenced by the Data Breach.

46. In response to the Data Breach, Defendants contend that they will "continue to review our policies, procedures and processes related to the storage and access of personal information."[9] Although Defendants fail to expand on what this alleged review of policies consists of, such review should have taken place before the Data Breach.

47. Through the Breach Notice, Defendants also recognized the actual imminent harm and injury that flowed from the Data Breach, so they encouraged breach victims to "remain vigilant against incidents of identity theft and fraud and to review your account statements and credit reports for suspicious activity and to detect errors." Ex. A.

48. Cybercriminals need not harvest a person's Social Security number or financial

---

[9] *Id.*

account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

49. On information and belief, Defendants plan to offer several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

50. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

51. On information and belief, Defendants failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their clients' PII. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendants were on Notice.***

52. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches preceding the date of the breach.

53. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[10] The 330 reported

[10] 2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited August 5, 2025).

breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[11]

54. Indeed, cyberattacks have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [12]

55. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry.

***Plaintiff's Experience***

56. Plaintiff is a current Velocity client. As a condition of receiving services with Velocity, Plaintiff provided it with his PII. Velocity used that PII to facilitate its services to Plaintiff and required Plaintiff to provide that PII to obtain services.

57. On information and belief, Velocity shared Plaintiff's PII with WaterStreet as part of its provision of services to Velocity. In other words, Velocity provided WaterStreet with Plaintiff's PII.

58. Plaintiff provided his PII to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

59. Defendants deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him promptly.

60. As a result of the Data Breach notice, Plaintiff spent time dealing with the

[11] *Id.*
[12] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited August 5, 2025).

consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, signing up for the credit monitoring offered by Defendants, self-monitoring his accounts and credit reports, and disputing the fraud he has already occurred. This time has been lost forever and cannot be recaptured.

61. Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach.

62. In fact, following the Data Breach, Plaintiff has experienced multiple fraudulent charges on his credit card, ranging in amounts from $9 to $35. Additionally, Plaintiff has suffered from fraudulent attempts to open credit cards in his name and has been notified that his information has been found on the Dark Web.

63. Further, since these incidences of fraud occurred, Plaintiff's credit score has dramatically decreased -- from 715 to 580.

64. Also following the Data Breach, Plaintiff has experienced a large influx of spam calls and text messages. This further demonstrates that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

65. Once an individual's PII is for sale and access on the dark web, as Plaintiff's PII is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[13] On information and belief, the fraud and spam calls and messages Plaintiff is experiencing is a result of the Data Breach.

66. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or

[13] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited August 5, 2025).

inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

67. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's PII—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

68. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties and possibly criminals.

69. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

70. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendants.

71. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended

addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the PII in their possession.

72. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

73. The value of Plaintiff's and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

74. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

75. One such example of criminals using PII for profit is the development of "Fullz" packages.

76. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

77. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

78. Defendants disclosed the PII of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

79. Defendants' failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Could Have Prevented the Data Breach***

80. Data breaches are preventable.[14] As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been

---

[14] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

prevented by proper planning and the correct design and implementation of appropriate security solutions."[15] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[16]

81. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [17]

82. In a Data Breach like the one here, many failures laid the groundwork for the Breach.

***Defendants failed to adhere to FTC guidelines.***

83. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of PII.

84. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of PII that is no longer needed;

c. encrypt information stored on computer networks;

[15] *Id.* at 17.
[16] *Id.* at 28.
[17] *Id.*

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

85. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

86. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

87. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

88. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Fail to Comply with Industry Standards***

89. As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

90. Several best practices have been identified that a minimum should be implemented

by employers in possession of PII, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

91. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

92. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

93. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for their clients. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

94. Plaintiff sues on behalf of himself and the Class, defined as follows, pursuant to

Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All US citizens whose PII was compromised in the March 2025 Data Breach, including all those citizens who received notice of the breach.

Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

95. Plaintiff reserves the right to amend the class definition.

96. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff is representative of the Class, consisting of at least 41,270 clients, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendants' possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interests do not conflict with the Class's interests, and he has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

i. Whether Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

ii. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendants were negligent in maintaining, protecting, and securing PII;

iv. Whether Defendants breached contract promises to safeguard Plaintiff's and the Class's PII;

v. Whether Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. Whether Defendants' Breach Notice was reasonable;

vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

97. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(Against Defendants on Behalf of Plaintiff and the Class)**

98. Plaintiff realleges all previous paragraphs as if fully set forth below.

99. Plaintiff and members of the Class entrusted their PII to Defendants. Defendants

owed to Plaintiff and the Class a duty to exercise reasonable care, or even slight care, in handling and using the PII in their care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

100. Defendants owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendants' failure to adequately safeguard their PII in accordance with industry standards concerning data security would result in the compromise of that PII —just like the Data Breach that ultimately came to pass. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PII by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

101. Defendants owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

102. Defendants owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security protocols. Defendants actively sought and obtained Plaintiff's and the Class's PII.

103. The risk that unauthorized persons would attempt to gain access to the PII and

misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII — whether by malware or otherwise.

104. PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

105. Defendants breached their duties by failing to exercise reasonable care, or even slight care, in supervising their employees, agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

106. Defendants' breach of their common-law duties to exercise reasonable care and their failures and gross negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' gross negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

107. Moreover, given that Defendant failed to implement even basic cybersecurity standards—such as a reasonable cybersecurity incident response plan tested through basic tabletop exercises—its failures amount to gross negligence.

**COUNT II**
**Negligence *Per Se***
**(Against Defendants on Behalf of Plaintiffs and the Class)**

108. Plaintiff realleges all previous paragraphs as if fully set forth below.

109. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

110. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect customers or, in this case, consumers' and clients' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff's and the members of the Class's PII.

111. Indeed, Section 5 of the FTC Act provides a clearly defined standard of care that can be seen in the FTC's guidance documents and its many consent orders following data breach investigations, which establish the cybersecurity safeguards that the FTC expects all companies who collect and maintain PII to adhere to.

112. Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

113. Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential PII.

114. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

115. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

116. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

117. But for Defendants' wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

118. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

119. Had Plaintiff and the Class known that Defendants did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendants with their PII.

120. Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

121. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

122. Additionally, as a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants' fails to undertake appropriate and adequate measures to protect their PII in their continued possession.

**COUNT III**
**Breach of an Implied Contract**
**(Against Defendant Velocity On Behalf of Plaintiff and the Class)**

123. Plaintiff realleges all previous paragraphs as if fully set forth below.

124. Plaintiff and the Class delivered their PII to Defendant Velocity as part of the process of obtaining services provided by Velocity.

125. Plaintiff and Class Members entered into implied contracts with Defendant Velocity under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and

compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendants.

126. In providing their PII, Plaintiff and Class Members entered into an implied contract with Defendant Velocity whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' PII.

127. In delivering their PII to Defendant Velocity, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

128. Plaintiff and the Class Members would not have entrusted their PII to Defendant Velocity in the absence of such an implied contract.

129. Defendant Velocity accepted possession of Plaintiff's and Class Members' PII.

130. Had Defendant Velocity disclosed to Plaintiff and Class Members that Defendants did not have adequate computer systems and security practices to secure consumers' PII, Plaintiff and members of the Class would not have provided their PII to Defendant.

131. Defendant Velocity recognized that consumer's PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

132. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant Velocity.

133. Defendant Velocity breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

134. Defendant Velocity breached the implied contract with Plaintiff and Class

Members by failing to promptly notify them of the access to and exfiltration of their PII.

135. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendants promised when Plaintiff and the proposed class entrusted Defendants with their PII; and (h) the continued and substantial risk to Plaintiff's and Class Members' PII, which remains in the Defendants' possession with inadequate measures to protect Plaintiff's and Class Members' PII.

**COUNT IV**
**Breach of Contract**
**(Against WaterStreet on Behalf of Plaintiff and the Class)**

136. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

137. Defendant WaterStreet entered into various contracts with its affiliated organizations and clients, including Velocity, to provide services to them.

138. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential information that Defendant WaterStreet agreed to collect and protect through its services. Thus, the benefit of collection and protection of the PII belonging to Plaintiff and the Class were the direct and primary objective of

the contracting parties.

139. Defendant WaterStreet knew that if it were to breach these contracts with its clients, the clients' clients, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their PII.

140. Defendant WaterStreet breached its contracts with its clients when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' PII.

141. As reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by Defendant WaterStreet's failure to use reasonable data security measures to store their PII, including but not limited to, the actual harm through the loss of their PII to cybercriminals.

142. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

**COUNT V**
**Unjust Enrichment**
**(Against Defendants on Behalf of Plaintiff and the Class)**

143. Plaintiff realleges all previous paragraphs as if fully set forth below.

144. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

145. Plaintiff and members of the Class conferred a benefit upon Defendants in providing the PII to Defendants.

146. Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class. Defendants also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate the services and goods they sold to Plaintiff and the Class.

147. Under principals of equity and good conscience, Defendants should not be

permitted to retain the full value of Plaintiff and the Class's PII because Defendants failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII to Defendants had they known Defendants would not adequately protect their PII.

148. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## PRAYER FOR RELIEF

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.

Date: August 5, 2025

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
Grayson Wells (BPR 039658)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

Samuel J. Strauss*
Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

**Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*